IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF NEW MEXICO

| | |
|---|---|
| IN RE: SHALE OIL ANTITRUST LITIGATION<br><br>The Document Relates to:<br><br>All Actions | Case No. 1:24-md-03119-MLG-LF<br><br>Judge Matthew L. Garcia |

**KANSAS'S REPLY IN SUPPORT OF
ITS MOTION FOR LIMITED INTERVENTION (DOC. 153)**

Although "we're not in Kansas anymore," not even Dorothy would expect to enter The Twilight Zone. The Political Subdivisions present contradictory positions: asking the Court to accept their pleadings as true, (Doc. 156 at 29), while simultaneously arguing those same pleadings should not be accepted as *too* true, (Doc. 175 at 18 n.23). The contradictions in their complaint cannot disguise what is facially apparent. Quite literally, the Political Subdivisions invoke this Court's remedial powers for near-universal relief for antitrust injuries for any person and entity who has paid a penny at a Kansas gas pump since 2021. (Doc. 86, ¶ 248.) This far exceeds their authority and Rule 23's scope.[1] Such broad remediation is an essential function *of the State*; therefore, if the Political Subdivisions prevail, the balance of dual sovereignty in our federalist system will be gravely disturbed.

Try as they might, the Political Subdivisions cannot escape their own complaint. *Warth v. Seldin*, 422 U.S. 490, 518 (1975) ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the

---

[1] To be clear about Kansas's underlying position, class actions as used here by the Political Subdivisions for broad and generalized statewide harm experienced by all members of the general public (including Kansas's other political subdivisions) infringe on the State's constitutional sovereignty and are otherwise contrary to law. But, Kansas does *not* take the position that all class actions by political subdivisions in all instances are improper or unconstitutional.

1

exercise of the court's remedial powers."). Kansas, the Shale Oil Defendants, and the Court cannot rely on theoretical pleadings the Political Subdivisions claim they intended *rather than* what they actually filed. *Ute Distrib. Corp. v. Norton*, 43 F. App'x 272, 278 (10th Cir. 2002) ("Intervenors must take the pleadings in a case as they find them" (internal citation omitted)). *Just trust us* is not adequate assurance. Droning on about legislative proposals, belittling a purported "scrivener's error," or committing to "convention" cannot disguise the transparent and blatant attempt to usurp the State's fundamental role—and it must stop.[2]

Accordingly, Kansas's intervention should be granted as of right, or alternatively, by permission, so Kansas can protect its sovereign interests. *Kane Cnty. v. United States* (*Kane III*), 928 F.3d 877, 890 (10th Cir. 2019) (noting the Tenth Circuit's "liberal approach [favoring] intervention[,]" especially for those "cases raising significant public interests" (cleaned up)).

I. **The Political Subdivisions fundamentally misrepresent Kansas's already-satisfied standing burden for intervention.**

The Court applies two principles regarding Kansas's standing for intervention. First, and most importantly, Kansas *already* possesses Article III standing and prudential standing as an objecting member of the class seeking to participate in this litigation. Second, *in ordinary litigation*, an intervenor must possess only "modified piggyback standing" in the Tenth Circuit.

*First*, Kansas *already* has standing in this litigation. *See Devlin v. Scardelletti*, 536 U.S. 1, 6-11 (2002) (holding nonnamed class members have an interest "sufficient to satisfy the constitutional requirements for injury, causation, and redressability"); *Tennille v. W. Union Co.*, 785 F.3d 422, 429 (10th Cir. 2015) (same). By the plain language of the pleadings, Kansas is a

---

[2] (Doc. 175, at 18 n.23); *see also* § II.A., *infra*; Kan. App. A.

"governmental […] entity end purchaser[] of crude oil derivative fuel products in […] Kansas[,]" (Doc. 86, ¶ 249), who is *not* "excluded from [the] Classes[,]" (*id*., ¶ 251). In *Devlin*, the Supreme Court reasoned that "[b]ecause petitioner is a member of the class bound by the judgment [of the class action], there is no question that he satisfies [the] three [standing] requirements." 536 U.S. at 7. Accordingly, Kansas also has Article III and prudential standing here. *Id*., at 12-13 (noting "the ease with which nonnamed class members" can intervene in class actions implicating their interests); *see also Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 191 (2022) (holding statutorily authorized state officials "have claimed an interest in the resolution of this lawsuit that may be practically impaired or impeded without their participation"). Kansas's existing standing and legal interests are not negated by the Political Subdivisions' preference against Kansas's intervention.

*Second*, and to the extent Kansas must establish *additional* standing, the Tenth Circuit applies the "modified piggyback standing" rule to intervenors (*not* the Eighth Circuit's traditional standing requirements). *Contra* (Doc. 175 at 13-14.) Under the rule, "an intervenor as of right must 'meet the requirements of Article III *if* the intervenor wishes to pursue *relief not requested*' by an existing party." *Kane III*, 928 F.3d at 886 (emphases added) (quoting *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 442 (2017)).[3] Applying the modified piggyback standing rule, the *Kane III* Court held the proposed defendant-intervenor had standing because it and the existing defendant "pursued the *same form* of relief." *Id*. at 887 n.13 ("To hold otherwise [*i.e.*, require 'identical' relief] would leave movants who pursued the same form of relief as the

---

[3] The Political Subdivisions identify this case as "*Kane I*," (Doc. 175 at 13), and identify the *Kane* cases in order of appearance in their brief. But, Kansas identifies this case as labeled by the Tenth Circuit: *Kane III*. *See Kane Cnty. v. United States*, 94 F.4th 1017, 1021 (10th Cir. 2024).

3

representative party *per se* adequately represented under Rule 24(a)(2)" and not entitled to intervention (internal citations omitted; emphasis added)).

Kansas has sufficiently invoked "modified piggyback standing" because Kansas is "pursu[ing] the same form of relief"—not *identical*—as the Shale Oil Defendants: dismissal. *See* (Doc. 153 at 15 ("the Shale Oil Defendants may seek a similar outcome as Kansas (*i.e.*, dismissal), but they do not share the 'unique,' sovereign interests of Kansas").) The only differences relate to the unique, party-specific interests at stake. Kansas seeks dismissal without prejudice because Kansas does not want to foreclose its possible claims as a result of the Political Subdivisions' improperly broad and generalized claims. In contrast, the Shale Oil Defendants likely want the claims dismissed with prejudice to foreclose all future proceedings. Requiring that Kansas seek the identical form of relief as the Shale Oil Defendants to invoke the modified piggyback standing rule would be precisely what the Tenth Circuit warned against. *See Kane III*, 928 F.3d at 887 n.13. Accordingly, Kansas also has modified piggyback standing.[4]

## II. Kansas's legally protectable interests are impeded and impaired by the Political Subdivisions and warrant intervention as of right under Rule 24(a)(2).[5]

The Political Subdivisions' entire response is premised on purely theoretical pleadings that exclude state and federal governmental entities, are sufficiently defined to exclude every arm of the state, and do not seek to have the same statewide effect as if this action were brought by the state. *But, those pleadings do not exist*. Because Kansas's legally protectable interests have

---

[4] Presumably, the Political Subdivisions allude to a "different relief" argument. *See* (Doc. 175 at 13 n.18.) But, this is the precise argument with which the Tenth Circuit "disagree[d.]" *Kane III*, 928 F.3d at 887.

[5] The Political Subdivisions concede the timeliness of Kansas's motion. (Doc. 175 at 11 n.17.) Likewise, the Political Subdivisions acknowledge no existing party represent Kansas's interests. *See, e.g.*, (*id*. at 20) ("Plaintiffs do not seek to represent states.") Accordingly, Kansas will only address the elements in dispute.

4

been usurped by the Political Subdivisions in this action, Kansas's sovereignty and control over each of its legal interests are impeded and impaired by the plain language of the Political Subdivisions' pleadings.

### A. Kansas's sovereign interests are directly implicated by the plain language of the Political Subdivisions' pleadings.

Kansas's legally protectable interest here *is* its sovereignty, which includes its sovereign, quasi-sovereign, and proprietary interests as each are implicated by the Political Subdivisions. *See Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1242 (10th Cir. 2008) ("The States have a legally protected sovereign interest in the exercise of sovereign power over individuals and entities within the relevant jurisdiction, which involves the power to create and enforce a legal code." (cleaned up)); *see also Oklahoma v. Biden*, 577 F. Supp. 3d 1245, 1253 (W.D. Okla. 2021) ("An impediment to a sovereign interest can give the State standing to sue in federal court.").

The Political Subdivisions make claims and seek relief on behalf of Kansas *and* all of Kansas's instrumentalities because Kansas is an unnamed and not otherwise excluded class member. (Doc. 86, ¶¶ 248-49, 251); *see also* Kan. App. A. The plain language implicates Kansas's sovereign and proprietary interests. But, the Political Subdivisions' only response to Kansas's concerns has been to offer an excuse and oppose Kansas's intervention as if their "error" does not still exist. The Political Subdivisions avoid their pleadings with promises about their intent in a future stage of litigation "*more than two years* from now."[6] (Doc. 175 at 16.)

---

[6] The Political Subdivisions' arguments on the "prematur[ity]" of Kansas's motion fail to reach the procedural motion before the Court (*i.e.*, limited intervention). *Cf.* (Doc. 175 at 23-25.) Instead, the "premature" arguments are directed toward Kansas's proposed motion to dismiss not presently before the Court. *See Berger*, 597 U.S. at 183. Regardless, the Tenth Circuit's jurisprudence of "discourag[ing] premature intervention[,]" *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1251 n.2 (10th Cir. 2001), is rooted in preventing "wastes [of] judicial resources" whenever

Their assurances cut against their position that no state interests are at stake in this litigation *right now* because these assurances would not be necessary if Kansas's interests were not implicated.[7] In other words, the Political Subdivisions necessarily concede that Kansas's interest are *currently* implicated. Further, the Political Subdivisions' assurances *outside* of the four-corners of the operative complaint is immaterial to Kansas's motion for intervention. *Ute Distrib. Corp.*, 43 F. App'x at 278; *see also* Kan. App. A.

The Political Subdivisions also literally, practically, and theoretically infringe on Kansas's sovereignty by making claims and seeking relief on behalf of *all* Kansas political subdivisions for an injury "involving a subject matter of statewide interest." *See Mountain States Legal Found. v. Costle*, 630 F.2d 754, 771 (10th Cir. 1980) (recognizing authority of state attorneys general); *Wyoming*, 539 F.3d at 1242. The alleged injuries are so generalized and non-localized as to implicate *every* one of Kansas's 105 counties and 627 cities[8] as "end purchasers of crude oil derivative fuel products" statewide. (Doc. 86, ¶¶ 248-49.)

Because all Kansas counties and cities are targeted, the Political Subdivisions attempt to usurp Kansas's exclusive legal claim and its attorney general's exclusive statutory role. Under Kansas law, "[w]henever it appears to the attorney general that [Kansas or a political

---

a "would-be intervenor['s]" interests are "protected by the original parties," *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994). Because Kansas's sovereign interests are not (and cannot be) protected by the original parties, Kansas's intervention is not "premature."

[7] Despite the Political Subdivisions' assurances otherwise, their pleadings have consistently disregarded States' legal interests. *See* Kan. App. A. Like the Political Subdivisions' attempt to re-write the pleadings in their response, the Political Subdivisions also misrepresent their underlying complaints. *Compare* (Doc. 175 at 18 n.23 (asserting all the underlying complaints "limited their class definitions to persons and non-state governmental entities"), *with* Kan. App. A.

[8] U.S. Census Bureau, *Kansas*, Guide to 2010 State and Local Census Geography (Oct. 8, 2021), https://www.census.gov/geographies/reference-files/2010/geo/state-local-geo-guides-2010/kansas.html (last accessed May 13, 2025).

subdivision] has been so injured or damaged by any [restraint of trade], as to entitle [it] to a right to bring any action [under] any state or federal antitrust or similar law, the attorney general shall have the authority to institute and prosecute any such actions or proceedings on behalf of [Kansas or a political subdivision], and shall have the authority to intervene" on its behalf "in such actions or proceedings." K.S.A. 50-162; *Mem'l Hosp. Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668 (1986) (the attorney general is the superior party and primary counsel whenever and wherever Kansas's public interest are involved).

In response, the Political Subdivisions claim "to vindicate their own private rights for their alleged economic losses arising from *their own* individual purchases[.]" (Doc. 175 at 20.) But this is facially untrue and contrary to the nature of a class action, where the Political Subdivisions seek to vindicate and "fairly and adequately protect the interests of the class" (*i.e.*, all Kansas political subdivisions). *See* Fed. R. Civ. P. 23(a)(4). Pursuing generalized statewide relief lies squarely with the State.[9]

Finally, the Political Subdivisions seek vindication on behalf of all end-payor Kansas consumers for antitrust injuries by the plain language of their pleadings. (Doc. 86, ¶¶ 248-49); *see also* Fed. R. Civ. P. 23(a)(4). This is fundamentally a quasi-sovereign interest because the injury and relief affect all Kansans in general. *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982) (quasi-sovereign interests include the repairing harms on behalf of "its residents in general" as opposed to an "identifiable group of individual residents"). Here, the Political Subdivisions *have* expressed "an interest apart from the interests of particular

---

[9] Thus, even the not-pleaded and undefined "non-state governmental entities" theoretical class newly offered in the Political Subdivisions' response runs afoul of state sovereignty because it necessarily interferes with Kansas's ability to enforce its legal code statewide and usurps the role of the state. K.S.A. 50-162.

private parties" (*i.e.*, asserting broad class allegations on behalf of all consumers) for "generalized interests" and injuries based on Kansans' "general health and well-being—both physical and economic." *New Mexico v. McAleenan*, 450 F. Supp. 3d 1130, 1182-83 (D.N.M. 2020) (cleaned up). The fact the Political Subdivisions make this quasi-sovereign claim is an *ultra vires* act that threatens Kansas's sovereign interest.

In response, the Political Subdivisions only critique Kansas for "not" analyzing whether federal or state antitrust statutes empower the attorney general to seek compensable damages under general principals of *parens patriae* and otherwise effectively concede they cannot vindicate claims on behalf of individual consumers in Kansas.[10] (Doc. 175 at 18-20.) But again, this response ignores the pleadings. (Doc. 86, ¶¶ 248-49.) By the plain language of the pleadings, the Political Subdivisions have brought a civil action on behalf of natural persons (*i.e.*, individual consumers) in Kansas, which usurps Kansas's legal claim. Regardless, the literal effect and statewide impact of this litigation infringes on Kansas's quasi-sovereign interests. *See New York v. Microsoft Corp.*, 209 F. Supp. 2d 132, 152 (D.D.C. 2002) (reasoning the suit was in a *parens patriae* capacity because "this is a case where the direct impact of the alleged wrong is felt by a substantial majority, though less than all, of the state's citizens, so that the suit can be said to be for the benefit of the public" (cleaned up)).

**B. As an absent class member, Kansas's sovereign interests are impaired or impacted by this class action.**

As an absent class member, Kansas's legal claims are in jeopardy by any final judgment.

---

[10] Kansas is not seeking intervention to assert any counterclaims for antitrust compensable damages against the Political Subdivisions, which means Kansas does not have to "perform" the misplaced analysis the Political Subdivisions attempt to create here. *Compare* (Doc. 175 at 19), *with Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 259 (1972).

*See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (noting the 1966 amendments to Rule 23 were "designed to secure judgments binding all class members"); *Brooks v. Barbour Energy Corp.*, 804 F.2d 1144, 1146 (10th Cir. 1986) (recognizing that dismissal with prejudice as final judgment on the merits and establishes *res judicata*). Right now, the Shale Oil Defendants have a pending joint motion to dismiss *with prejudice* before the Court. (Doc. 129.) Thus, if the Court grants the pending motions to dismiss, Kansas's possible legal claims usurped by the Political Subdivisions will be foreclosed. *E.g.*, (Doc. 86, ¶¶ 260-65, 307-08.) Likewise, Kansas's possible legal claims not pleaded (*e.g.*, claims under the Kansas Consumer Protection Act, K.S.A. 50-623, *et seq*.) will be subject to *res judicata*.

Contrary to the Political Subdivisions' misguided response, Kansas *will* be legally bound as a non-named class member if the Court dismisses with prejudice. *Compare* (Doc. 175 at 15 n.21), *with Amchem Prods.*, 521 U.S. at 614, *Brotherhood of R. R. Trainmen v. Balt. & O. R. Co.*, 331 U.S. 519, 524 (1947) (noting *permissive* intervention applicants not legally bound or prejudiced in *non-class* private litigation), *and Planned Parenthood of Wisc., Inc. v. Kaul*, 384 F. Supp. 3d 982, 988 (W.D. Wis.) (noting caselaw *supporting* "'concern with the stare decisis effect of a decision can be ground for intervention'"), *aff'd*, 942 F.3d 793 (7th Cir. 2019).

In support of their argument, the Political Subdivisions cite a myriad of class action orders attempting to brush away Kansas's concerns as if combining political subdivisions with private parties in class actions is purely what is at stake.[11] (Doc. 175 at 21 n.26.) *First*, their authority does not reach the novel questions of law raised by Kansas's proposed motion to dismiss. (Doc. 153-1). *Second*, their authority similarly does not involve political subdivisions

---

[11] But again, this misunderstands Kansas's position. *See* Footnote 1, *supra*.

attempting to remedy a statewide generalized harm affecting every public agency and the overwhelming majority of that state's general population, as the Political Subdivisions seek to do here.[12]

*And third*, not a single cited authority reaches the merits of a state's or state official's *intervention* under Rule 24. *See Berger*, 597 U.S. at 183 ("But the merits of that dispute are not before us, only an antecedent question of civil procedure: Are [authorized state officials] entitled to participate in the case under the terms of [Rule] 24(a)(2)?"). On the contrary, in *In re Domestic Air Transportation Antitrust Litigation*, the court reasoned the states should not be able to raise objections because the states "became aware of these proceedings, yet did not ask to participate" and no state had "attempted to intervene earlier in this case." 148 F.R.D. 297, 342-44 (N.D. Ga. 1993).[13] But here, Kansas became aware of these proceedings, ascertained all of its implicated interests, and now seeks intervention to protect those interests.

### III.    Kansas should be permitted to intervene under Rule 24(b).[14]

Again, the Political Subdivisions' response is wholly premised on ignoring their pleadings. The Political Subdivisions insubstantially assert that Kansas shares no common

---

[12] *E.g.*, *Alaska Elec. Pension Fund v. Bank of Am., N.A.*, 2018 WL 8581152, at *1-2 (S.D.N.Y. Nov. 13, 2018) (employee retirement fund plaintiffs; injury and relief is not generalized statewide); *Iowa Pub. Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2024 WL 5004632 (S.D.N.Y. Dec. 6, 2024) (same); *In re GSE Bonds Antitrust Litig.*, 396 F. Supp. 3d 354, 358 (S.D.N.Y. 2019) (same; "Plaintiffs are investment and retirement funds" including a state official acting in official capacity as authorized by state statute); *In re Liquid Aluminum Sulfate Antitrust Litig.*, 2017 WL 3131977 (D.N.J. July 20, 2017) (plaintiffs own and operate affected water and sewer systems).

[13] The Political Subdivisions also misrepresent this authority to suggest Kansas does not have standing. (Doc. 175 at 17-18.) But unlike here, that court only found the states had no standing because "all governmental entities"—including political subdivisions—were clearly excluded from the class definition and the states were "not appearing on behalf of class members[.]" *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 307, 342-43.

[14] The Political Subdivisions concede the timeliness of Kansas's motion. (Doc. 175 at 25 n.27.) The Political Subdivisions also do not contest permissive intervention under Rule 24(b)(2)(A) and (b)(3). *Compare* (Doc. 153 at 17-18) *with* (Doc. 175 at 25-27). Again, Kansas only addresses those elements in dispute.

questions of law with any party in this litigation. (Doc. 175 at 25.) But that makes no sense: Jurisdiction and standing *are* among the most fundamental legal questions in any suit. *City of Colo. Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1079 (10th Cir. 2009). And by the very nature of a class action, questions of fact and law are commonly shared. *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943 (10th Cir. 2005) (noting "it is required that 'questions of law or fact common to the members of the class predominate over any questions affecting only individual members'" under Rule 23). Moreover, the Shale Oil Defendants raise numerous questions about the plaintiffs' jurisdiction and standing. *See, e.g.*, (Doc. 129 at 22.) Only by ignoring the record before the Court can a party conclude Kansas shares no common questions of law with any party in this litigation.

The Political Subdivisions feign that "suffer[ing]" will be unleashed on all parties if Kansas intervenes. (Doc. 175 at 26.) But, beyond scant mentions of "clutter," "duplicative discovery," and "floodgates concerns," they fail to point to any concrete prejudice *here* in this litigation. Kansas's intervention will not "clutter" the litigation. *Cf. Arney v. Finney*, 967 F.2d 418, 421 (10th Cir. 1992) (affirming denial of permissive intervention to *pro se* intervenor who was adequately represented by class counsel, unlike here). Duplicative discovery is not an issue. *Cf. Tri-State Generation & Transmission Ass'n, Inc. v. N.M. Pub. Regul. Comm'n*, 787 F.3d 1068, 1075 (10th Cir. 2015) (affirming denial of permissive intervention where electrical cooperative proposed intervenor had *identical* interests with state agency defendant and cause identical discovery for plaintiffs). And the "floodgates concerns" is a false equivalency because the Political Subdivisions are not independent sovereigns and no existing party is defending Kansas's sovereign interests. *Cf. Las Americas Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland*

11

*Sec.*, 348 F.R.D. 397, 403 (D.D.C. 2025) (denying Texas's intervention to defend DHS immigration rule where federal government was adequately defending the rule, *i.e.*, the federal government's sovereign interest).

Because Kansas shares common questions of law and no party is prejudiced, the Court should permit intervention. *See Berger*, 597 U.S. at 197 ("Any presumption against intervention is especially inappropriate when wielded to displace a State's prerogative to select which agents may defend its laws and protect its interests."); *cf. Am. Ass'n of People With Disabilities v. Herrera*, 257 F.R.D. 236, 259 (D.N.M. 2008) (denying permissive intervention because proposed intervenor's interest was adequately represented, unlike here).

## CONCLUSION

Kansas comes to this District to defend its sovereignty, *not* to legislate. Debate on proposed legislation is best suited in the Kansas Legislature and should not distract from the Political Subdivisions' request to this Court. The concerning trend of political subdivisions undermining exclusive state authority with improper class actions must end. For these reasons, Kansas's motion for limited intervention against the Political Subdivisions should be granted as of right, or alternatively, permissively.

**Dated:** June 3, 2025

Respectfully submitted,

**KRIS W. KOBACH**
**Attorney General of Kansas**

*/s/ Nicholas Smith*
Melanie S. Jack, D.N.M. Bar No. 25-85
  *First Assistant Attorney General*
Nicholas C. Smith, D.N.M. Bar No. 25-77
  *Assistant Attorney General*
Adam T. Steinhilber, D.N.M. Bar No. 25-83
  *Assistant Solicitor General*
**OFFICE OF ATTORNEY GENERAL**
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Phone: (785) 296-3751
Fax:    (785) 291-3699
Email: Melanie.Jack@ag.ks.gov
         Nicholas.Smith@ag.ks.gov
         Adam.Steinhilber@ag.ks.gov

***Attorneys for State of Kansas***
***Proposed Defendant-Intervenor***

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of June, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have entered an appearance, and I otherwise caused all parties to be served with the foregoing document as required by Federal Rule of Civil Procedure 24(c).

*/s/ Nicholas Smith*
Nicholas C. Smith